**SLIP OP 12 - 117**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
┌─────────────────────────────────────────┐
│ YAMA RIBBONS AND BOWS CO., LTD,          │
│                                          │
│              Plaintiff,                  │
│                                          │
│              v.                          │
│                                          │
│ UNITED STATES,                           │
│                                          │
│              Defendant,                  │
│                                          │
│              and                         │
│                                          │
│ BERWICK OFFRAY LLC,                      │
│                                          │
│              Defendant-Intervenor.       │
│                                          │
└─────────────────────────────────────────┘
```

Before: Donald C. Pogue,
            Chief Judge

Court No. 10-00291

<u>OPINION</u>

[Commerce's final determination is affirmed.]

Dated: September 14, 2012

<u>John J. Kenkel</u>, <u>Gregory S. Menegaz</u>, and <u>J. Kevin Horgan</u>, DeKieffer & Horgan, of Washington, DC, for the Plaintiffs,

<u>Renee A. Gerber</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant. With her on the briefs were <u>Stuart F. Delery</u>, Acting Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; and <u>Reginald T. Blades, Jr.</u>, Assistant Director. Of counsel on the briefs were, <u>Daniel J. Calhoun</u>, Office of Chief Counsel for Import Administration, United States Department of Commerce, and

<u>Gregory C. Dorris</u>, Pepper Hamilton LLP, of Washington, DC, for the Defendant-Intervenor.

**Pogue, Chief Judge**: In this action, Plaintiff, Yama

Ribbons and Bows Co., Ltd. ("Yama"), a producer of ribbons,

challenges the final countervailing duty ("CVD") rate determined by the United States Department of Commerce ("Commerce" or "the Department") in an investigation of certain narrow woven ribbons with woven selvedge[1] from the People's Republic of China ("China"). Specifically, Yama asserts that Commerce erred in calculating a CVD subsidy rate for Yama's products by incorrectly using the value of Yama's unconsolidated Chinese sales, rather than Yama's consolidated Hong Kong sales, as the denominator in the CVD subsidy calculation. Yama claims that because the unconsolidated sales were not the first sales at arm's length, they are not the actual "sales value" required by Commerce's regulations for determining a subsidy rate.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006). For the reasons explained below, Commerce's decision to use Yama's unconsolidated Chinese sales to value the denominator for the subsidy calculation is affirmed.

## BACKGROUND

This case arises from Commerce's CVD investigation, initiated on August 16, 2009, to determine whether

---

[1] Selvedge is the edge of ribbon on either side, woven such that it will not fray or unravel. Webster's Third New International Dictionary 2062 (2002).

countervailable subsidies[2] had been granted to certain Chinese
manufacturers of narrow woven ribbons with woven selvedge.[3]  Yama
was a respondent in this investigation.  When calculating CVD
subsidy rates for a respondent, Commerce divides the value of
subsidy benefits by the sales value of the merchandise which
received the subsidies.[4]  In other words, the denominator in
Commerce's calculation is the sales value of the importer or
producer's subject merchandise.

      To calculate Yama's CVD rate, Commerce preliminarily
included sales from Yama's affiliated Hong Kong company, Yama
HK,[5] as part of the calculation's denominator.  Inclusion of the

---

[2] A countervailing duty is imposed on an import when the
United States International Trade Commission has found "material
injury" to a domestic industry and Commerce determines that "the
government of a country or any public entity within the territory
of a country is providing, directly or indirectly, a
countervailable subsidy . . . ."  19 U.S.C. § 1671.  To be
countervailable, a subsidy must provide a financial contribution
to a specific industry, and the respondent must benefit.  See 19
U.S.C. § 1677(5)-(5A); Essar Steel Ltd. v. United States, 34 CIT
__, 721 F. Supp. 2d 1285, 1292 (2010).

[3] The period of investigation is January 1, 2008 to December
31, 2008.

[4] See 19 C.F.R. § 351.525(a) ("The Secretary will calculate
an ad valorem subsidy rate by dividing the amount of the benefit
allocated to the period of investigation or review by the sales
value during the same period of the product or products to which
the Secretary attributes the subsidy under paragraph (b) of this
section.").

[5] The name of Yama's Hong Kong affiliate is confidential.
This opinion will refer to it as "Yama HK".

Hong Kong sales resulted in a preliminary *de minimis* subsidy rate for Yama.  See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China, 74 Fed. Reg. 66,090, 66,096 (Dep't Commerce Dec. 14, 2009) (preliminary affirmative countervailing duty determination and alignment of final countervailing duty determination with final antidumping duty determination) ("Preliminary Determination").  Because the subsidy determination was *de minimis*, Yama's imports would not have been subject to countervailing duties.  See id.

After considering comments from interested parties, Commerce revised its calculations in its final determination to exclude Yama HK's sales.  See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China, 75 Fed. Reg. 41,801 (Dep't Commerce July 19, 2010) (final affirmative countervailing duty determination) ("Final Determination") and accompanying Issues and Decision Memorandum, (July 12, 2010), available at http://ia.ita.doc.gov/frn/summary/PRC/2010-17541-1.pdf (last visited Sept. 12, 2012)("I&D Memo").  Rather, Commerce used the sale price of the merchandise from Yama to Yama HK as the denominator.  I&D Memo at 20.  This exclusion resulted in a subsidy rate greater than *de minimis*, and thus in the imposition of countervailing duties.[6]  See id. at 20, 22.  Plaintiff now

_____

[6] The final rate was calculated pursuant to 19 C.F.R. § 351.525(b)(6)(i), which states that, for companies with cross-

challenges the final CVD rate.

## STANDARD OF REVIEW

The court will sustain Commerce's determination if it is supported by "substantial evidence on the record," and "otherwise . . . in accordance with law."  Section 516A(b)(1)(B)(i) of the Tariff Act of 1930, 19 U.S.C. § 1516a(b)(1)(B)(i).[7]  To be in accordance with law, the agency's decision must be authorized by the statute, and consistent with the agency's regulations.  See, e.g., Hontex Enter., Inc. v. United States, 27 CIT 272, 292–93, 248 F. Supp. 2d 1323, 1340–41

_____

ownership, "the Secretary normally will attribute a subsidy to the products produced by the corporation that received the subsidy."
    In calculating the CVD subsidy rate, Commerce found that Xiamen Yama Import and Export Co., Ltd. ("Yama Trading"), a Chinese affiliate, supplied inputs to Yama.  It therefore consolidated the sales of these two Chinese companies and attributed the Chinese subsidies granted to both those Chinese companies to their consolidated Chinese sales.
    While there are exceptions, listed in 19 C.F.R. § 351.525(b)(6)(ii)-(v), which create alternate CVD subsidy rate calculation methods, Commerce determined that the CVD record did not show contain sufficient evidence to support the application of these exceptions.  I&D Memo at 20.  It therefore excluded sales figures from the Hong Kong affiliate in its final calculation of the denominator pursuant to 19 C.F.R. § 351.525(b)(6)(i).  See id.
    In supplemental briefing requested by the court, Plaintiff made clear that it is not claiming any of the statutory exceptions listed in 19 C.F.R. § 351.525(b)(6)(ii)-(v).

    [7] Further citations to the Tariff Act of 1930 are to Title 19 of the United States Code, 2006 edition.

(2003).


## DISCUSSION

Yama claims that the use of an intra-company transfer price, instead of the sales price to a U.S. consumer, as the denominator for its subsidy rate calculation, was improper. It also claims that Commerce used an appropriate methodology in an analogous determination, Coated Free Sheet Papers from the People's Republic of China, 72 Fed. Reg. 60,645 (Dep't Commerce Oct. 25, 2007) (final affirmative countervailing duty determination) ("CFS Paper"), yet unreasonably refuses to follow its own prior practice. These arguments are unavailing.

It is Commerce's practice to attribute subsidies to the company that received them. 19 C.F.R. § 351.525(b)(6)(i). While there are exceptions that allow Commerce to attribute the subsidies to foreign cross-owned subsidiaries and affiliates,[8] Commerce must base its decisions on the record before it in each individual investigation. With respect to data within their

---

[8] In antidumping ("AD") and CVD investigations, Commerce treats Hong Kong and the People's Republic of China as two separate countries. See Application of U.S. Antidumping and Countervailing Duty Laws to Hong Kong, 62 Fed. Reg. 42,965 (Dep't Commerce Aug. 11, 1997); 22 U.S.C. § 5713(3) ("The United States should continue to treat Hong Kong as a territory which is fully autonomous from the United Kingdom and, after June 30, 1997, should treat Hong Kong as a territory which is fully autonomous from the People's Republic of China with respect to economic and trade matters.").

control, the burden rests on the interested parties "to create an accurate record during Commerce's investigation."  Essar Steel Ltd. v. United States, 678 F.3d 1268, 1277 (Fed. Cir. 2012).

I.  Denominator

As stated above, Commerce based the denominator of the CVD calculation on the sales price from Yama to Yama HK.  Yama argues that this calculation is improper because the transfer of goods from Yama to Yama HK was not a sale at arm's length, but rather an "artificial internal transfer price."  Pl.'s Rule 56.2 Mot. for J. upon the Agency R., ECF No. 22 at 32 ("Pl.'s Br.").  Yama notes that Commerce's verification report identifies the figures Commerce used as "internal transfer values,"  Pl.'s Br. at 33 (citing Commerce Verification Report: Yama Ribbons and Bows Co., Ltd., (Mar. 17, 2010) Admin. R. Con. Doc. 148 at 5), and contends that when Commerce acknowledged these were internal transfers, it should have turned to the first arms-length sales, namely, the sales from its Hong Kong affiliate.

Commerce correctly responds that only Chinese companies (Yama and Yama Trading) received Chinese subsidies and therefore, pursuant to 19 C.F.R. § 351.525(b)(6)(i), using sales figures from Yama HK, a Hong Kong company, would be inappropriate.  Yama HK did not directly receive any Chinese subsidies.  By excluding Yama HK's sales from the denominator, Commerce complied with its own regulation, which calls for it to attribute subsidies to the

sales of the companies which receive them.  See 19 C.F.R. § 351.525(b)(6)(i).  Furthermore, Commerce notes that it does not have any information regarding Hong Kong subsidies that may have been received by Yama HK, and therefore including the consolidated Hong Kong sales in the denominator without properly attributing any corresponding Hong Kong subsidies would be inappropriate and contrary to the statute.  See 19 C.F.R. § 351.525(a).

While Yama appears to have identified its cross-ownership relationship with Yama HK early in the administrative process in one of its questionnaire responses, the evidence supporting its assertion of cross-ownership between the two companies is not on the CVD administrative record, but rather, appears to be proprietary data on the record for the accompanying AD investigation.  See Pl.'s Br. at 38.  Yama contends that Commerce should have requested the necessary information, but it is well established that in AD and CVD investigations, the burden falls on the interested party to place relevant information within its possession on the record.  Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994) at 829, reprinted in 1994 U.S.C.C.A.N. 4040; 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of [Commerce] the amount and

nature of a particular adjustment."). Therefore, while a cross-ownership relationship between Yama and Yama HK might exist, which potentially could place Yama in one of the exceptions listed under 19 C.F.R. § 351.525(b), Commerce was correct in not considering any of these exceptions because the record before it in the investigation did not contain any evidence to support the existence of such a relationship. I&D Memo at 20.

## II. Coated Free Sheet Paper methodology

Yama next argues that Commerce should have applied the methodology from CFS Paper, a case Yama claims is analogous to its own situation. See Pl.'s Brief at 30 (citing CFS Paper). Yama notes a number of similarities between its situation and CFS Paper, namely that: (1) the price on which the alleged subsidy is based differs from the United States invoice price; (2) the exporter and the party who invoices the customer are affiliated; (3) the United States invoice establishes the customs value to which countervailing duties are applied; (4) there is a one-to-one correlation between the invoice that reflects the price on which subsidies are received and the invoice with the mark-up that accompanies the shipment; (5) the merchandise is shipped directly to the United States; and (6) the invoices can be tracked as back-to-back invoices that are identical except for price. Id.

In response, Commerce makes two arguments: First, Yama

mischaracterized Commerce's calculations in <u>CFS Paper</u>.  Second, even if the methodology used in <u>CFS Paper</u> would alter the outcome here, Yama had the burden of providing verifiable documentation sufficient for Commerce to make Yama's requested adjustment, and Yama did not provide this data.  <u>See</u> Def.'s Opp'n to Pl.'s Rule 56.2 Mot. For J. upon the Agency R., ECF No. 31 at 38 ("Def.'s Br.").

Commerce clarified that in <u>CFS Paper</u> it did not, as Plaintiff claims, simply use the consolidated sales figures reflected in the affiliated reseller's prices as the denominator. Rather, it adjusted the subsidies calculated by the ratio of the sales value of exports from the investigated country and the sales value in the United States.  <u>See</u> <u>id.</u>  Regardless, Commerce continued, it would be unable to apply the <u>CFS Paper</u> calculation methodology to a determination of the CVD margin for Yama, because Yama failed to provide the necessary documentation, which, as discussed *supra*, it bore the burden of producing.[9] Commerce states that Yama has cited "<u>no</u> record evidence to substantiate as a factual matter its eligibility for a rate adjustment," Def.'s July 3 Letter, ECF No. 44, at 4 (emphasis in original), and therefore it was reasonable to use the ad valorem

---

[9]  Commerce clarified that the particular missing information is any verifiable data regarding the above-mentioned six criteria that Yama claims link its situation to that in <u>CFS Paper</u>.  <u>See</u> Def.'s July 3 Letter, ECF No. 44 at 3.

subsidy rate calculation – without applying any of the exceptions – specified in Commerce's applicable regulation.

Yama argues that it submitted evidence of its eligibility for a rate adjustment in the companion antidumping investigation, and that Commerce should have pulled relevant data from the AD record and placed it on the record in the CVD proceeding. Yama contends that the CVD proceeding "should be seen as one combined proceeding with the simultaneous antidumping investigation," especially because "the petition that initiated the countervailing duty investigation was the same petition that included the request for an antidumping investigation." See Pl.'s July 26 Letter, ECF No. 53 at 7-9. However, antidumping duty and countervailing duty investigations operate pursuant to different statutory provisions, are separate administrative proceedings, and as such, each investigation has its own unique and separate administrative record. See 19 C.F.R § 351.306. Importantly, the relevant data appears to be proprietary and therefore it would have been inappropriate for Commerce simply to move it from one administrative record to another. See 19 C.F.R § 351.306 (authorizing sanctions against any Commerce employee who discloses business proprietary information). While Commerce has discretion to transfer certain non-proprietary information from one proceeding to another, see, e.g., Melamine Chemicals, Inc. v. United States, 2 CIT 113, 115–16 (1981), it may not

unilaterally transfer proprietary information across administrative proceedings.  See 19 U.S.C. § 1677f(b)-(c); 19 C.F.R § 351.306.

Even assuming, *arguendo*, that Plaintiff may be correct in its assertions that Yama's merchandise was merely transferred from one company to another and therefore qualifies for the exception used in CFS Paper, the result does not change.  Absent any evidence on the administrative record supporting these claims, which Plaintiff has the burden of providing, Commerce's decision to use the unconsolidated sales figures as the denominator in its CVD rate calculation is supported by substantial evidence.

### CONCLUSION

For the reasons discussed above, Commerce's calculation of the countervailing duty rate for Plaintiff is AFFIRMED.  Judgment will be issued accordingly.

                                          /s/ Donald C. Pogue
                                 Donald C. Pogue, Chief Judge

Dated: September 14, 2012
       New York, New York